IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MICHAEL D. WALLACE, # 134895, ) | Civil Action No. 3:05-1458-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| COLLETON COUNTY SHERIFF'S ) | |
| OFFICE; AND ) | |
| SOUTHERN HEALTH PARTNERS, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

Plaintiff, Michael D. Wallace, filed this action on May 25, 2005.[1] At the time of the alleged incidents, he was a pretrial detainee at the Colleton County Detention Center ("CCDC"). He is currently an inmate at the MacDougall Correctional Institution of the South Carolina Department of Corrections ("SCDC"). On July 5, 2005, Defendant Southern Health Partners ("SHP") filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on August 2, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant SHP's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on September 9, 2005 and SHP filed a reply on September 9, 2005. Defendant Colleton County

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

Sheriff's Office ("CCSO") filed a motion for summary judgment on January 2, 2006. A second Roseboro order was issued on January 4, 2006. Plaintiff filed a response on February 3, 2006.[2]

## MOTION TO STRIKE

On February 3, 2006, Plaintiff filed a motion to strike portions of CCSO's motion for summary judgment and supporting affidavits. He claims that his Complaint does not assert a claim for excessive force or denial of medical care after the use of mace and a tazer device and that "false averments" concerning these "nonexistent" claims should be stricken from the Court record.

Plaintiff has not filed a certificate of service to show that he served Defendants with a copy of his motion to strike (he wrote "cc" on the bottom of his motion, but there is no certificate of service). Plaintiff was previously reminded, in the undersigned's December 7, 2005 order, of this requirement.[3] Additionally, the motion to strike should be denied because Plaintiff fails to show

---

[2]On February 3, 2006, Plaintiff also filed a letter in which he appears to complain that officials at SCDC, who are not parties to this action, are denying him access to the courts because they will not make photocopies of certain documents for him. Plaintiff has been able to file numerous pleading in this action. He has not alleged that SCDC will not allow him to handwrite copies of documents or pay for copies. Charges for copying services, particularly in the light of available alternatives, do not constitute denial of access to the courts. See, e.g., Lyons v. Clark, 694 F. Supp. 184, 188 (E.D.Va. 1988)(inmates do not have unlimited rights to photocopies), aff'd, (4th Cir. 1989)[Table]; Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1981)(denial of free photocopying does not amount to a denial of access to the courts); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980); Dugar v. Coughlin, 613 F. Supp. 849, 853 (S.D.N.Y 1985).

[3]The Federal Rules of Civil Procedure require:
Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders…, every paper relating to discovery required to be served upon a party unless the court otherwise orders,… shall be served upon each of the parties.

(continued…)

that the defenses asserted by Defendant CCSO are clearly invalid as a matter of law. Under Rule 12(f) of the Federal Rules, the court may strike "from any pleading any insufficient defense." The striking of such defenses is a proper means of expediting legal proceedings. See, e.g.; United States v. 416.81 Acres of Land, 514 F.2d 627 (7th Cir.1975); Klemens v. Air Line Pilots Ass'n Int'l, 500 F. Supp. 735 (W.D.Wash.1980). A defense is insufficient "if it is clearly invalid as a matter of law." Anchor Hocking Corp. v. Jacksonville Electric Auth., 419 F. Supp. 992, 1000 (M.D.Fla.1976). A motion to strike is a severe measure and it is generally viewed with disfavor, because it is difficult to establish that a defense is clearly insufficient. A Rule 12(f) motion will not be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from acts and statements that are not disputed. In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits. 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1381 at 801-02; see also United States v. 187.40 Acres of Land, 381 F. Supp. 54, 56 (M.D. Pa. 1974). Although Plaintiff, in the "Summary" and "Relief" sections of his Complaint, appears to have only asserted a claim concerning his medical care (Complaint at 5-6), he wrote in the "Statement of Claim" section that he was "shot with 3 tazers and also with mace." Complaint at 4. CCSO appears to have addressed this as an excessive force claim.

---

[3](…continued)
Fed. R. Civ. P. 5(a). Additionally, "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court within a reasonable time after service.…" Fed. R. Civ. P. 5(d).

3

## MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that his constitutional rights have been violated as to his medical care at CCDC. He requests monetary damages and that Defendants provide him with medical care.[4] Defendant SHP argues that it is entitled to summary judgment because Plaintiff fails to show that SHP's medical providers were deliberately indifferent to his serious medical needs. Defendant CCSO argues that it is entitled to summary judgment because: (1) it is entitled to Eleventh Amendment immunity; (2) it cannot be held liable on a theory of respondeat superior; (3) Plaintiff fails to establish a claim for denial of medical treatment; (4) Plaintiff fails to establish an excessive force claim;[5] and (5) Plaintiff is not entitled to punitive damages.

1.  Medical Claims

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. SHP contends that Plaintiff has, at most, alleged negligence, which does not rise to the level of deliberate indifference and that his allegations appear to state a disagreement with his treatment which does not amount to a constitutional violation. The CCSO contends that Plaintiff fails to show deliberate indifference to a serious medical need as he admits he received medical treatment from SHP's medical personnel, the Colleton County emergency room, and an

---

[4] Plaintiff's claims for injunctive relief are moot, as he has been transferred to SCDC (see Plaintiff's Change of Address Notice filed May 25, 2005). See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); and Ross v. Reed, 719 F.2d 689 (4th Cir. 1983).

[5] As noted above, Plaintiff discusses an incident in which he was allegedly hit by tazers and mace. Complaint at 4-5. Plaintiff, however, does not expressly assert an excessive force claim in his Complaint and has now filed a separate action (Civil Action 06-261-HMH-JRM) in which he asserts an excessive force claim concerning the alleged incident on February 10, 2005. Thus, his claims concerning that incident will not be addressed here.

4

orthopaedist. Further, CCSO argues that medical services are provided to the CCDC through SHP, an independent contractor, and there is no evidence of a constitutional violation by CCDC because Plaintiff has not shown that CCSO was personally involved in any denial of treatment, interfered with the SHP doctor's performance, or tacitly authorized or was indifferent to any constitutional violation by the SHP doctor.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[6]  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
> * * * * * * *
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent

---

[6] Plaintiff's medical claims, because he was a pretrial detainee, are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

5

failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did

>not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and a defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that SHP was deliberately indifferent to any of his serious medical needs. SHP licensed practical nurse Barbara Garcia ("Nurse Garcia") states that (pursuant to standard treatment protocols) she provided Plaintiff with Naproxen and Flexeril when he complained of shoulder, neck, and back pain; x-rays of Plaintiff's spine and shoulder in January 2005 were negative; Plaintiff was examined by the CCDC physician on January 11 and 31, 2005; Plaintiff was treated at the emergency room of the Colleton County Hospital on January 22 and February 11, 2005; the CCDC physician ordered a consultation with an orthopedic pain specialist on March 7, 2005; and Plaintiff was examined by Dr. Nivens, an orthopedist, on April 6, 2005. Garcia Aff. SHP physician, Dr. Charles A. Bush ("Dr. Bush") states that he examined Plaintiff on two separate occasions and ordered an orthopedic consultation; Plaintiff was sent to the emergency department at the Colleton County Hospital on two occasions for x-rays which were negative; Plaintiff was given medication for pain and muscle relaxants; Dr. Nivens examined Plaintiff on April 6, 2005, and Dr. Niven's prescribed treatment plan was followed by the nurse at CCDC. Bush Aff.

Review of Plaintiff's medical records (attachments to SHP's motion for summary judgment) reveals that he was examined by Nurse Garcia and Dr. Bush on numerous occasions. Medications for pain and other symptoms from his injuries (including Flexeril, Motrin, Miracle Rub, Naproxen, Indocin, Robaxin, and Percogesic) were prescribed. Medical records from the Colleton Medical Center reveal that x-rays of Plaintiff's left shoulder and of his lumbar and thoracic spine, taken on January 21, 2005, were negative for fracture. An x-ray of Plaintiff's chest with left clavicle on January 22, 2005 was questionable for an acute fracture. The radiologist noted degenerative changes and wrote:

> There is subtle lucency within the left clavicle approximately 4 cm lateral to the sternoclavicular junction region. This is difficult to confirm on all reviews and could be artifactual. Correlate clinically for focal tenderness referable to this region which would suggest an acute fracture.

It appears an acute fracture was correlated clinically, and Plaintiff was prescribed a clavicle strap for a broken collarbone. Discharge instructions were given concerning treatment. The discharge instructions indicated that a noticeable bump in the bone might remain from the fracture and that Acetaminophen (Tylenol) or Ibuprofen (Advil, Motrin) could be used for pain unless another pain medicine was prescribed. A prescription for Ultram and Motrin was given to Plaintiff.

Plaintiff claims that he was not given instructions on how to use the clavicle strap and took the strap off everyday (instead of leaving it on for two weeks as instructed), causing him further injury. Nurse Garcia, however, noted in Plaintiff's medical records that a copy of the hospital's instructions are given to the detainee and another copy to CCDC. Plaintiff has not presented evidence that he inquired about the use of the strap until February 9, 2005, at which time Nurse Garcia wrote him back with the instructions. On January 25, 2005, he did, however, inquire

8

about the prescribed medications from the Colleton Medical Center visit on January 22, 2005. Nurse Garcia wrote: "Apparently [Plaintiff] is under the impression that Dr. Holman ordered a narcotic. I will drop him a note telling him Dr. Holman ordered what he was already on (Ultram 50 mg), in fact, she ordered a lower dose that he is getting."

On February 11, 2005, an x-ray of Plaintiff's left clavicle and shoulder showed a fracture near the proximal and middle thirds left clavicle with inferior displacement of the distal fragment by approximately 5 mm. There was no evidence of left shoulder dislocation. X-rays of Plaintiff's lumbar spine showed no acute fracture or destructive lesion, normal alignment, and normal height of vertebral bodies and disk spaces of normal height. A clavicle strap was prescribed. An appointment with an orthopaedist was ordered on March 7, 2005. On April 6, 2005, Dr. Nivens "suggested" that Plaintiff be prescribed Motrin and Flexeril (drugs previously prescribed by Dr. Bush)[7] and that he have follow-up clavicular x-rays. He felt that Plaintiff should have MRIs of his cervical and lumbar spine. Plaintiff's medical records indicate that he had additional x-rays of his clavicle on May 16, 2005. In his September 2, 2005 memorandum, Plaintiff admits that he has now received MRIs of his spine.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level

---

[7]Plaintiff, in his memorandum in opposition to Defendant CCSO's motion for summary judgment, states that he objects to "false averments" that he had a prescription drug addiction and that he inflicted injuries upon himself (to obtain prescription drugs). It should be noted that SHP attached a copy of Plaintiff's Admission Data History and Physical form completed on June 14, 2004 in which it was written that Plaintiff was taking the "street drugs" of crack/cocaine and Oxycontin (a narcotic) and was consuming twelve to twenty-four beers daily. Plaintiff signed the bottom of the form. His medical records indicate that he was placed on a detoxification program on June 14, 2004, and he continued to have withdrawal symptoms as late as June 21, 2004.

of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that SHP's actions or inactions rose to the level of a constitutional violation.

2. Respondeat Superior

Defendants CCSO argues that it cannot be held liable on a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that CCSO was personally liable for any deliberate indifference to Plaintiff's medical needs. Further, Plaintiff has not shown that CCSO was deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails

to show that Defendant CCSO was liable on a theory of respondent superior or supervisory liability.

    3.    <u>Immunity</u>

Defendant CCSO argues that it is entitled to summary judgment because it is entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit

11

against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

CCSOP provides that it is a state office run by the Sheriff of Colleton County. As CCSO is an arm of the state, it is entitled to Eleventh Amendment immunity. See Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996); McCall v. Williams, 52 F. Sup. 2d 611, 623 (D.S.C. 1999); Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir. 1989)[Table].

## CONCLUSION

Based on a review of the record, it is recommended that Plaintiff's motion to strike (Doc. 32) be denied, Defendant Southern Health Partners' motion for summary judgment (Doc. 10) be granted, and the motion for summary judgment of Defendant Colleton County Sheriff's Office (Doc. 29) be granted.

                                          Respectfully submitted,

                                          s/Joseph R. McCrorey
                                          United States Magistrate Judge

February 14, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
